[736 NYS2d 324]

ROBERT MORRIS et al., Appellants, v PORT AUTHORITY OF NEW YORK AND NEW JERSEY, Respondent.

First Department, January 10, 2002

**APPEARANCES OF COUNSEL**

*Robert M. Simels* of counsel (*Robert M. Simels, P. C.,* attorneys), for appellants.

*Carlene V. McIntyre* of counsel (*Kathleen Gill Miller* on the brief; *Milton H. Pachter,* attorney), for respondent.

## OPINION OF THE COURT

Nardelli, J. P.

The primary issue raised in this appeal is whether plaintiffs have demonstrated a likelihood of success on the merits, in order to obtain injunctive relief, on their claim that a search of the lockers used by Port Authority police officers, which was conducted by defendant Port Authority of New York and New Jersey, violated those officers' Fourth Amendment constitutional right to be free from unreasonable search and seizure.

## *BACKGROUND*

Plaintiff Robert Morris is a Port Authority police officer who has held a "leadership position" with plaintiff Port Authority Benevolent Association (the PBA) since 1997. The PBA is a corporation which represents all Port Authority police officers. Defendant Port Authority of New York and New Jersey (the Port Authority) is a municipal corporation which operates, among other things, Kennedy International Airport (Kennedy Airport), which is located in Queens County, New York. The Port Authority and the PBA negotiated and are parties to a contract known as the Memorandum Agreement (the Agreement) which, *inter alia*, governs the conditions of employment for Port Authority police officers.

The Port Authority provides 200 lockers at Kennedy Airport, which are assigned to Port Authority police officers who are stationed full time at Kennedy Airport Command. The police officers use the lockers to store their civilian clothing and uniforms, as well as various personal items, and are each issued two keys to their lockers. The Port Authority retains one key to each locker and a master key which opens all of the lockers. The parties note that the keys maintained by the Port Authority had, in the past, been used when police officers could not locate their own keys, or in other extreme situations, such as the death of a police officer.

The police officers on tour outside of the command building at Kennedy Airport are required to carry two-way radios for public-safety reasons, which include the officers' ability to summon medical and vehicular assistance or back-up, and, in the event of an aviation disaster, to coordinate crash, fire and rescue functions with, and through, police command. Indeed, recognizing the importance of dependable communications, the

Agreement specifies the number of radios which must be maintained at each command and, pursuant to that provision, Kennedy Airport is required to have 125 radios available.

The Port Authority maintains that in March 1999, the Port Authority Police Department (the PAPD) issued a directive requiring all police officers to turn their radios in to command after their tours. The PBA calls into question whether or not this directive was, in fact, circulated. The PAPD contends that in October 1999, Kennedy Airport experienced a shortage of radios because the police officers, at the end of their tours, were storing the radios in their lockers instead of turning them in. The genesis of the PAPD's suspicions regarding the lockers is not clear.

The PBA, however, is alleged to have complained about the shortage, and the collateral safety issues, to Anthony Infante, an Inspector in the PAPD, on more than one occasion during September and October 1999. Inspector Infante asserts that in response to the PBA concerns, he advised the police officers at a number of roll calls that steps would be taken to recover the radios, including searches of the officers' lockers. The PAPD thereafter opened and searched approximately 50 lockers, in the presence of PBA delegates who were ordered to be present, on October 13, 1999. Two radios were found and disciplinary charges were filed against those officers.

Inspector Infante subsequently issued a memorandum dated October 14, 1999, advising all police officers in the Kennedy Airport Command that "[i]t is apparent that the [radio] shortage is due to Police Officers storing radios in their lockers when they are not utilized * * * periodical inventories will be conducted on the lockers until such time as all the radios are accounted for." Inspector Infante maintained that although an additional search of the lockers, approximately two weeks after the initial search, failed to turn up any additional radios, approximately 50 of the missing radios were turned in during a short period following the initial locker inspection. Interestingly, Inspector Infante stated, somewhat vaguely, that in October 1999, all 125 radios were not available for use for every tour, and then notes that some of the radios "were permanently assigned to fire trucks and particular police officers such as fire marshals, abandoned car detail, and motor vehicle inspections. The older radios require more frequent repair and some are out of use for that reason." Inspector Infante, however, failed to provide any numerical data whatsoever with regard to how many of the 125 radios were unavailable or out

for repair on average at any given time or as to the number of radios "permanently assigned."

## THE UNDERLYING ACTION

In January 2000, the PBA commenced the within action by the service of a summons and verified complaint annexed to an order to show cause. In its complaint, the PBA sought declaratory and injunctive relief enjoining the Port Authority from conducting any additional random searches of the police officers' lockers; and declaring that such searches constituted a violation of the police officers' constitutional and contractual rights. Plaintiffs' order to show cause requested an injunction enjoining defendant from conducting any further locker searches unless the officer is subject to a disciplinary proceeding.

The motion court, in a decision and order entered August 10, 2000 (the order), held that the searches in question did not violate plaintiffs' constitutional rights and that plaintiffs, therefore, could not establish that they had a likelihood of success on the merits, resulting in the denial of injunctive relief (citing *Grant Co. v Srogi*, 52 NY2d 496). The motion court, however, did not go so far as to dismiss plaintiffs' constitutional claims. The court further found that it was unclear from the documentary evidence whether or not being subjected to random searches changed the terms and conditions of plaintiffs' employment as those terms and conditions are defined in the Agreement, and that such question must be left to the trier of fact.

Initially, it must be noted that although both plaintiffs and defendant proceed under the perception that the motion court dismissed plaintiffs' constitutional claims, a review of the court's order reveals that while the court did engage in an in-depth analysis of that issue, the court concluded that "[i]n light of the foregoing, the searches in question, whether they were consensual or not, did not violate plaintiffs' constitutional rights, and therefore plaintiffs' claim that they have a likelihood of success on this issue is unpersuasive." Moreover, the decretal paragraph of the court's order is limited to the following disposition: "plaintiffs' motion for injunctive relief is denied." The introductory paragraph of the court's order, which may very well be one source of the confusion, states that plaintiffs were seeking injunctive *and* declaratory relief, but a review of plaintiffs' order to show cause, as well as the motion court's order in its entirety, makes it clear that the motion was for injunctive relief alone and was disposed of in that manner.

In any event, it is settled that while "a motion for a [preliminary] injunction opens the record and gives the court authority to pass upon the sufficiency of the underlying pleading" (*Guggenheimer v Ginzburg*, 43 NY2d 268, 272; *see also, Clark v New York State Off. of Parks, Recreation & Historic Preservation*, 288 AD2d 934; *Bero v Bero*, 143 AD2d 866), this prerogative does not extend to the evaluation of conflicting evidence and the court's inquiry is limited to whether the pleading in question states a cause of action (*Ratner v Steinberg*, 259 AD2d 744; *Six Nations Apt. Hous. Fund Dev. Co. v Six Nations Props.*, 175 AD2d 567). In addition, the court may not, on its own initiative, convert a motion for injunctive relief into a motion for summary judgment without giving adequate notice to the parties and providing an opportunity for the parties to lay bare their proof (*Clark v New York State Off. of Parks, Recreation & Historic Preservation, supra*, at 935; *Ratner v Steinberg, supra*, at 744; *Farrell v Kiernan*, 213 AD2d 373).

Moreover, as this Court has noted on more than one occasion, "[a] preliminary injunction is a provisional remedy. Its function is not to determine the ultimate rights of the parties, but to maintain the status quo until there can be a full hearing on the merits" (*Residential Bd. of Mgrs. of Columbia Condominium v Alden*, 178 AD2d 121, 122; *Koob v IDS Fin. Servs.*, 213 AD2d 26, 33; *see also, Jamie B. v Hernandez*, 274 AD2d 335, 336 ["(t)he function of a preliminary injunction is to provide a provisional remedy by maintaining the status quo pending a full hearing on the merits, rather than to determine the ultimate rights of the parties and mandate corrective action"]).

For the purposes of this motion, plaintiffs have clearly stated a cause of action regarding their constitutional claims.

## INJUNCTIVE RELIEF

In order to obtain a preliminary injunction, the movants must demonstrate the likelihood of success on the merits; irreparable harm in the absence of injunctive relief; and that a balancing of the equities lies in their favor (*Aetna Ins. Co. v Capasso*, 75 NY2d 860, 862; *Grant Co. v Srogi*, 52 NY2d 496, 517; *Pilipiak v Keyes*, 286 AD2d 231). In this matter, I agree with the motion court that plaintiffs have failed to satisfy the first prong of the above requirements, and that as a result, the motion for injunctive relief was properly denied.

Plaintiffs maintain that the locker searches were highly intrusive, that the Port Authority acted on a "hunch," and that

despite the Port Authority's contentions to the contrary, the searches were not merely visual, but involved the moving and inspection of personal property. Plaintiffs aver that the police officers had a "strong expectation of privacy in the contents of their lockers" and that the searches thereof violated their constitutional rights as well as the terms of the Agreement. Plaintiffs also note that a simple, less intrusive way to account for the radios would have been to set up a system where each officer, as he/she left the command building for a tour, signed a radio out, and then back in, upon the conclusion of the tour.

The guarantee against unreasonable searches and seizures is found in both the Federal and State Constitutions (US Const 4th Amend; NY Const, art I, § 12) and is designed to protect the personal privacy and dignity of the individual against unwarranted intrusions by the State (*Matter of Delaraba v Nassau County Police Dept.*, 83 NY2d 367; *Matter of Abe A.*, 56 NY2d 288). The protections set forth above extend to unreasonable searches conducted by the government, even in those situations where the government acts as an employer (*National Treasury Empls. Union v Von Raab*, 489 US 656, 665; *Leventhal v Knapek*, 266 F3d 64, 72-73).

In *O'Connor v Ortega* (480 US 709), the United States Supreme Court held that in the case of searches conducted by a public employer, "we must balance the invasion of the employees' legitimate expectations of privacy against the government's need for supervision, control, and the efficient operation of the workplace" (*id.* at 719-720), and that the "special needs" of a public employer may allow it to dispense with probable cause and warrant requirements "when conducting workplace searches related to investigations of work-related misconduct" (*Leventhal v Knapek, supra*, at 73, citing *O'Connor v Ortega, supra*, at 719-726 [plurality op], at 732 [Scalia, J., concurring]).

In sum, a public employer's intrusions on the constitutionally protected privacy interests of public employees for non-investigatory, work-related purposes, as well as for investigations of work-related misconduct, "should be judged by the standard of reasonableness under all the circumstances," and under this standard, "both the inception and the scope of the intrusion must be reasonable." (*O'Connor v Ortega, supra*, at 725-726; *see also, New Jersey v T.L.O.*, 469 US 325, 341.) A search is justified at its inception when there are reasonable grounds to suspect that a search will reveal evidence that the employee is guilty of some work-related misconduct, or that the search is necessary for a non-investigatory, work-related

purpose, such as retrieving a file (*O'Connor v Ortega, supra,* at 726; *Matter of Caruso v Ward,* 72 NY2d 432, 437-438). The search is permissible in scope when the means adopted are reasonably related to the objectives of the search and are not excessively intrusive given the nature of the misconduct (*O'Connor v Ortega, supra,* at 726; *Leventhal v Knapek, supra,* at 73; *Matter of Delaraba v Nassau County Police Dept., supra,* at 373).

In *Matter of Caruso v Ward (supra),* the New York State Court of Appeals noted that where the employees in question are police officers, their special status must be factored into the reasonableness analysis for " 'it is within the State's power to regulate the conduct of its police officers even when the conduct involves the exercise of a constitutionally protected right' " (*Matter of Caruso v Ward, supra,* at 439, quoting *Matter of Morrisette v Dilworth,* 59 NY2d 449, 452). The Court in *Ward* also held that "[t]he privacy expectations of police officers must be regarded as even further diminished by virtue of their membership in a paramilitary force, the integrity of which is a recognized and important State concern." (*Matter of Caruso v Ward, supra,* at 439; *see also, Matter of Morrisette v Dilworth, supra,* at 452; *Matter of Purdy v Kreisberg,* 47 NY2d 354, 361.)

In light of the governing principles set forth above, I agree with the motion court that in this matter, plaintiffs have failed to demonstrate a likelihood of success on the merits, thereby warranting the denial of injunctive relief. I do, however, recognize the existence of some disputed factual issues, including whether the Port Authority had reasonable grounds to suspect that a search of the lockers would reveal evidence of employee misconduct. The parties also differ as to the scope of the search, as well as the level of intrusion once the search began, but I also remain aware of the diminished expectation of privacy of these employees, especially in view of their status as police officers, the importance of maintaining the integrity of the police force and, because of the turbulent times we now find ourselves in, of dependable communications. I do not, however, pass on the ultimate merits of this claim.

## CONTRACTUAL CLAIMS

Plaintiffs also maintain that the locker searches breached the Agreement between the parties because it constituted a change in the terms and conditions of the officers' employment. Plaintiffs rely on section II, subparagraph 1 of the Agreement, which provides:

"Unless a contrary intent is specifically expressed in this Memorandum of Agreement, all practices, procedures and policies governing existing terms and conditions of Police Officers which are not specifically enumerated or set forth in this Memorandum of Agreement, shall be maintained at no less than the highest standards in effect at the time of execution of this Memorandum of Agreement and, during the term of this Memorandum of Agreement, any such practice, procedure or policy pursuant to any rule, regulation, instruction, directive, memorandum, statute or otherwise and governing an existing term or condition of employment shall not be limited, restricted, impaired, removed or abolished unilaterally."

Since it is unclear from the above, or any other provision of the Agreement, whether or not locker searches and/or inspections are a condition of employment, I agree with the motion court that this issue is for the trier of fact, and is sufficient to warrant the denial of injunctive relief.

Accordingly, the order of the Supreme Court, New York County (Walter Tolub, J.), entered August 10, 2000, which denied plaintiffs' motion for a preliminary injunction, should be affirmed, without costs.

WILLIAMS, MAZZARELLI, LERNER and FRIEDMAN, JJ., concur.

Order, Supreme Court, New York County, entered August 10, 2000, affirmed, without costs.