OPINION OF THE COURT
Joseph E. Fahey, J.
The defendants David Wilkinson and Michael Casey are each charged in this indictment with the crimes of defrauding the government in violation of section 195.20 of the Penal Law, and two counts of official misconduct in violation of section 195.00 (1) and (2) of the Penal Law for allegedly filing false time sheets and obtaining wages that they were not entitled to in their capacity as officers with the Village of North Syracuse Police Department and the Village of Marcellus Police Department between the dates of January 1, 2000 and December 31, 2006.
Both defendants moved to suppress the fruits of a search of their computers at the Village of North Syracuse Police Department on November 21, 2006 by members of the Onondaga County District Attorney’s Office upon the ground that the defendants did not consent to the search and that the search warrant issued by the Onondaga County Court (Aloi, J.) was issued without sufficient probable cause. A suppression hearing was held in this court on December 5, 2007 and March 21, 2008.
On December 5, 2007, the People called Investigator Robert Grudzinski, an investigator with the White Collar Crime Unit. Investigator Grudzinski testified that he went to the Village of North Syracuse Police Department on November 21, 2006 accompanied by Investigator Donald Markert.[1] Prior to going to the North Syracuse Police Department, they obtained permission from the Chief of Police, Thomas Conley, to look at the computers and the network.[2] Upon arriving at the police department, they were met by Thomas Johnson, a contract employee of the department, who took them to the basement of the *416 department where the network is maintained.[3] After downloading e-mails of the defendants to a computer disk, they went to the defendants’ individual computers to retrieve any e-mails that were not on the network.[4] Investigator Grudzinski requested Mr. Johnson to turn on Captain Casey’s computer and was immediately confronted with a document with a heading entitled “discrepancies, 2001 — Marcellus Police Department.”[5] Investigator Grudzinski described the document as a work sheet in grid form.[6] He immediately directed Mr. Johnson to remove the document from his view, and he called Assistant District Attorney Matt Doran for direction on how to proceed.[7] Doran advised Grudzinski to obtain a search warrant, and Grudzinski prepared an affidavit which was faxed to the District Attorney’s Office.[8] Ultimately, a search warrant was signed by the Honorable Anthony Aloi, a judge of this court, and both Casey’s and Wilkinson’s computers were seized.[9]
The People also called Thomas Johnson as a witness. Mr. Johnson testified that he assisted Investigator Grudzinski in retrieving the e-mails from the network. He. further testified that after retrieving the e-mails from the network, Investigator Grudzinski advised him that he wished to examine the defendants’ computers.
The defendants contend that the fruits of the search of the defendants’ computers must be suppressed because the defendants had an expectation of privacy in their computers, that the investigators from the District Attorney’s Office did not have the consent of either of the defendants or the North Syracuse Police Department to examine the computers, and that the search warrant obtained after the viewing of the document on the Casey computer was the “fruit of the poisonous tree.”
The People contend that the defendants lack standing to challenge the validity of the search warrant, and lack the requisite expectation of privacy in the contents of the computer. Additionally, they contend that their investigators had the consent of the Chief of Police to examine the network and the computers, and that obtaining the search warrant and the seizure of the computers was proper in all respects.
*417 Consent
At the outset the court needs to dispose of the issue of whether the investigators had the consent of the defendants or the North Syracuse Police Department to examine the computers.
It is undisputed that the consent of neither defendant was obtained to search the computers prior to the computers being examined, although the defendant Casey was present at the North Syracuse Police Department when the investigators were there that morning.[10] The issue concerning the consent obtained from the Chief of Police, Thomas Conley, is a more muddled one.
Investigator Grudzinski unequivocally testified that he had the permission of Chief Conley to examine both the network and the computers when he went to the North Syracuse Police Department that morning.[11] On cross-examination, he adhered to this position.[12] Confronted with his affidavit and Investigator Markert’s affidavit as part of the search warrant application, he conceded that the application averred that they had obtained permission to look at the network only.[13] He further agreed he had not been given specific permission to examine the Casey computer.[14] Since Chief Conley was not called (as a witness) to clarify this issue, the court cannot find the search of the computers was consensual.
Defendants’ Standing and Expectation of Privacy
The issues of the defendants’ standing to challenge the searches of their computers and what expectation of privacy they had in the information in the computers are inextricably bound up with one another.
The People rely on Morris v Port Auth. of N.Y. & N.J. (290 AD2d 22 [2001]) for the proposition that the search of the computers was both reasonable and proper. In that case, the Court held:
“In O’Connor v Ortega (480 US 709), the United States Supreme Court held that in the case of searches conducted by a public employer, ‘we must *418 balance the invasion of the employees’ legitimate expectations of privacy against the government’s need for supervision, control, and the efficient operation of the workplace’ (id. at 719-720), and that the ‘special needs’ of a public employer may allow it to dispense with probable cause and warrant requirements ‘when conducting workplace searches related to investigations of work-related misconduct’ (Leventhal v Knapek, supra at 73, citing O’Connor v Ortega, supra at 719-726 [plurality op], at 732 [Scalia, J., concurring]).
“In sum, a public employer’s intrusions on the constitutionally protected privacy interests of public employees for non-investigatory, work-related purposes, as well as for investigations of work-related misconduct, ‘should be judged by the standard of reasonableness under all the circumstances,’ and under this standard, ‘both the inception and the scope of the intrusion must be reasonable.’ (O’Connor v Ortega, supra at 725-726; see also, New Jersey v T.L.O., 469 US 325, 341.) A search is justified at its inception when there are reasonable grounds to suspect that a search will reveal evidence that the employee is guilty of some work-related misconduct, or that the search is necessary for a noninvestigatory, work-related purpose, such as retrieving a file (O’Connor v Ortega, supra, at 726; Matter of Caruso v Ward, 72 NY2d 432, 437-438). The search is permissible in scope when the means adopted are reasonably related to the objectives of the search and are not excessively intrusive given the nature of the misconduct (O’Connor v Ortega, supra, at 726; Leventhal v Knapek, supra, at 73; Matter of Delaraba v Nassau County Police Dept., supra, at 373)” (290 AD2d at 27-28).
The defendants urge that the holding in O’Connor v Ortega (480 US 709 [1987], supra) supports their position in the instant case. While the requirements and standards of reasonableness set forth in O’Connor are of some interest, they are of particular applicability to “investigations of work-related misconduct” or are “necessary for a noninvestigatory work-related purpose.” (480 US at 725, 726.) The instant search, rather than a search being conducted by the employer for “work-related misconduct” or for “a noninvestigatory work related purpose,” was part of a criminal investigation conducted by the District Attorney’s Office seeking evidence of unlawful conduct (id.).
*419 The People also rely upon Leventhal v Knapek (266 F3d 64 [2d Cir 2001]), United States v Angevine (281 F3d 1130 [10th Cir 2002]), and United States v Slanina (283 F3d 670 [5th Cir 2002]) for the proposition that there was no expectation of privacy and the search was properly conducted. An examination of these cases reveals that they are similarly inapposite.
Leventhal v Knapek (supra) arose out of a civil action brought by the plaintiff against his employer for disciplinary action taken against him after a search by his employer revealed that he was conducting a part-time tax preparation business on his work computer. The employer had a written policy prohibiting theft that included “ ‘improper use of State equipment . . . [including] conducting personal business on State time.’ ”[15] When disciplinary proceedings were brought against the plaintiff, he acknowledged that his use of the computer was a violation of the workplace policy. In United States v Angevine (281 F3d 1130 [2002], supra), the Stillwater Oklahoma Police Department executed a search warrant to examine the defendant’s computer at the Oklahoma State University after being informed by the defendant’s wife that there was child pornography on the computer. In deciding that the search was proper, the court took note of the fact that the University had a policy that declared that the contents of the computer was the property of the University and forbade downloading obscene material in violation of state or federal law. Similarly, in United States v Slanina (supra), the defendant was discovered to have child pornography on his computer while his computer was being serviced by another city employee. In Slanina, the court found that the defendant did have an expectation of privacy but held that the standard in O’Connor v Ortega (supra) was the proper standard for determination of the defendant’s claims since it involved a search for workplace misconduct at its inception. Moreover, the court observed:
“As an expert in child pornography investigations, Keller undoubtedly appreciated the possibility that the investigation into Slanina’s misuse of city computer equipment might result in evidence of criminal violations. Nevertheless, any evidence of criminal acts was also proof of work-related misconduct. Once Smith and Ure uncovered evidence of work-related misconduct, the city did not *420 lose its interest in being able to fully investigate such misconduct in a regular and efficient manner. The record evidence demonstrates that as of the time of Keller’s search, the probe remained at least partly an investigation into employee misconduct. The subsequent involvement of the City Manager and human resources in the process attests to this characterization. To hold that a warrant is necessary any time a law enforcement official recognizes the possibility that an investigation into work-related misconduct will yield evidence of criminal acts would frustrate the government employer’s interest in ‘the efficient and proper operation of the workplace.’ O’Connor, 480 US at 723, 107 S.Ct. 1492 [1987]. We decline to impose such a burden on government employers. Therefore, in assessing the constitutionality of Keller’s search, we apply the standard articulated in O’Connor.” (283 F3d 670, 679 [2002].)
It went on to further observe:
“Under O’Connor, a search by a government employer must be justified at its inception and reasonably related to the circumstances justifying the interference in the first place. Id. at 726, 107 S.Ct. 1492 [1987]. We have little difficulty concluding that Keller’s search passes this test. At the inception of his search, Smith had already discovered titles of newsgroups suggesting the presence of child pornography on Slanina’s computer. Smith had also found an image of adult pornography, which represented a violation of city policy. On this evidence alone, Keller was justified in conducting a full search of the computer and accompanying disks to look for evidence of misconduct. Moreover, the scope of the search was also reasonable. The computer had been provided to Slanina by the city, and any use of it to access pornography was a violation of city policy. Keller was entitled to determine the extent of Slanina’s violations” (283 F3d 679-680).
What makes Angevine and Slanina distinguishable from the instant case is that neither the University nor the City had a policy which gave the employees any specific expectation of privacy. To the contrary, the University specifically informed its employees that their use of the computers was monitored, that *421 the contents of the computers were the property of the University, and that employees were forbidden from accessing obscene material defined under state or federal law. Similarly, Slanina’s employer had a specific prohibition against its employees accessing pornography.
A defendant seeking suppression of evidence has the burden of establishing standing by demonstrating a legitimate expectation of privacy in the premises or object searched. (People v Ramirez-Portoreal, 88 NY2d 99, 108-109 [1996], citing People v Wesley, 73 NY2d 351 [1989].) This privacy evaluation has two components, “a subjective component — did defendant exhibit an expectation of privacy in the place or item searched” and an “objective [component] — does society generally recognize defendant’s expectation of privacy as reasonable.” (People v O’Brien, 2 AD3d 1222, 1224 [2003], quoting Ramirez-Portoreal, 88 NY2d at 108.)
In the case at bar, the North Syracuse Police Department had a written policy which permitted, if not encouraged, employees to utilize the computers for “personal needs at minimal or no cost to the taxpayer.”[16]
Likewise, the nature and the character of the evidence seized from the computers in Angevine and Slanina, i.e., child pornography, could not have led either defendant to reasonably believe that such material was permissibly downloaded and possessed under any circumstances. In the present case defendant Casey had a spreadsheet on his computer, the nature and origin of which was unclear, and unlike child pornography, was not inherently incriminating. While the discovery of this spreadsheet led to the application for a search warrant to a member of this court, there is little question that the decision to seek and obtain the warrant was the product of the warrantless search of Casey’s computer, which the court is unable to find was consensual.
Moreover, even if one could argue that the discovery of the spreadsheet provided sufficient probable cause to seize and search the Casey computer, nothing of a similar nature existed to justify the search and seizure of the Wilkinson computer.
 In the court’s view both defendants have demonstrated a legitimate and reasonable expectation of privacy in the computers searched. The court further finds that the searches *422 were conducted without consent and that the seizures of the computers resulted solely from the warrantless search of the Casey computer prior to the issuance of a search warrant.
Accordingly, the defendants’ motion to suppress the fruits of the searches is granted.

. Hearing, December 5, 2007 at 19.

. Ibid, at 9.

. Ibid, at 10.

. Ibid, at 10-11.

. Ibid, at 12.

. Ibid, at 12.

. Ibid, at 12.

. Ibid, at 12-13.

. Ibid, at 13.

. Ibid, at 25.

. Ibid, at 9-10.

. Ibid, at 22.

. Ibid, at 22-24.

. Ibid, at 24.

. 266 F3d at 64, 67.

. Hearing exhibit A.