UNITED STATES of America,
Plaintiff–Appellee,

v.

John David EASTERLING,
Defendant–Appellant.

No. 01–6187.

United States Court of Appeals,
Tenth Circuit.

April 17, 2002.

Before KELLY, HOLLOWAY, and BRISCOE, Circuit Judges.

## ORDER AND JUDGMENT *

BRISCOE, Circuit Judge.

Defendant John Easterling appeals his jury conviction for violation of 18 U.S.C. § 922(g)(1) (possession of a firearm after being convicted of a felony) and the 235 month sentence imposed. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

---

\* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## I.

Easterling was wanted on an outstanding warrant for a supervised release violation. Officers learned that he could be found at an auto repair garage in Oklahoma City and went to the garage on April 26, 2000, at approximately 5:20 p.m. A sign posted at the garage stated it was open 9:00 a.m. to 6:00 p.m. As the officers were parked outside, Easterling came out of and re-entered the garage several times. He was arrested in the parking lot at approximately 5:40 p.m. as he left the garage. Several officers went into the garage through the unlocked exterior door to determine if anyone else was present. They noticed a small office with an open door. When one of the officers stepped into the office, he observed a gun, a watch, and a photo album on the floor. The gun was identified by serial number and determined to be a .380–caliber Taurus that belonged to Easterling's ex-wife. The photo album contained pictures of Easterling and his ex-wife and mail addressed to Easterling at an address different than the garage. Easterling was indicted for possessing a firearm after having been convicted of a felony.

## II.

### Suppression of evidence

Easterling contends the district court erred in denying his motion to suppress the gun. He argues that the officers' search of the garage violated his Fourth Amendment rights. In reviewing the denial of a motion to suppress evidence, we view the evidence in the light most favorable to the government. *See United States v. Jones*, 213 F.3d 1253, 1258 (10th Cir.2000). "In reviewing the district court's refusal to grant a suppression motion, 'we accept the district court's factual findings absent clear error and review *de novo* the district court's determination of reasonableness under the Fourth Amendment.'" *United States v. Angevine*, 281 F.3d 1130, 1133 (10th Cir.2002) (quoting *United States v. Olguin–Rivera*, 168 F.3d 1203, 1204 (10th Cir.1999)).

To assert a Fourth Amendment challenge to a search, a defendant must satisfy two separate inquiries; the first is subjective, the second is objective. "First, the defendant must show a subjective expectation of privacy in the area searched, and second, that expectation must be one that society is prepared to recognize as reasonable." *Angevine*, 281 F.3d at 1134. "The ultimate question is whether one's claim to privacy from the government intrusion is reasonable in light of all the surrounding circumstances." *Id.* It is well understood that a defendant carries the burden of establishing a personal Fourth Amendment interest that was implicated by the search. *See Jones*, 213 F.3d at 1260.

After conducting an evidentiary hearing, the district court concluded that Easterling did not have a reasonable expectation of privacy with respect to the garage or the gun. The court found that the garage was open for business to the public at the time of the search. Easterling made no effort to keep any portion of the garage private. Further, Easterling had not been given permission to live or sleep in the office. Easterling argues the evidence shows that he "resided" in the garage because he was given keys to the garage, the lessee and the sublessee both testified at the evidentiary hearing that he "occupied" the garage, and the officers' surveillance of the garage was in response to information that Easterling was "living" there.

Roger Merritt, the lessee, and Darrel Skaggs, the sublessee, testified that Easterling did not have permission to move into the garage, but Skaggs testified he was aware that Easterling lived there.

Easterling worked for Skaggs. Merritt testified that he knew Easterling worked for Skaggs and that in April 2000, he learned Easterling was sleeping in the office. Merritt stated he told Skaggs that Easterling could not sleep in the office, and that he told Skaggs to tell Easterling to vacate the office. Merritt testified that the office was for *his* use for business purposes and he would have told Easterling to leave if Easterling was in the office when Merritt needed the office to conduct business.

■ After reviewing the evidence presented, we find ample support for the district court's findings that the garage was open to the public, and that Easterling was residing in the office without permission. Likewise, the district court's legal conclusion that Easterling had no reasonable expectation of privacy in the location searched is also correct. We previously have determined that presence, without the express permission of the owner, fails to confer a reasonable expectation of privacy that society is prepared to recognize. *See Jones*, 213 F.3d at 1260. The capacity "to claim the protection of the Fourth Amendment depends not upon a property right in the invaded place but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *United States v. Carr*, 939 F.2d 1442, 1446 (10th Cir.1991). Here, Easterling's camping out in the garage office at the sufferance of those lawfully authorized to occupy the premises did not give rise to a reasonable expectation of privacy.

If Easterling can be afforded any Fourth Amendment protection as regards the search in this case, it would be the protection afforded him as an employee of a business. In *Minnesota v. Olson*, 495 U.S. 91, 96–97, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990), the Court held that a place searched need not be one's "home" for one to have a legitimate expectation of privacy.

> While it may be said as a general rule that there is a lesser expectation of privacy in commercial as contrasted with residential buildings, ... classifying a building as 'commercial' is not dispositive as to the level of privacy that attaches to such premises. On the contrary, the reasonable expectation of privacy in any given property turns on the particular nature and circumstances surrounding the place to be searched.

*United States v. Bute*, 43 F.3d 531, 536 (10th Cir.1994) (internal citations omitted). There is a lesser expectation of privacy in commercial premises open to the public during business hours as opposed to after hours when no employees are present. *Id.* at 537. We address an employee's expectation of privacy in the workplace on a case-by-case basis. *Angevine*, 281 F.3d at 1134 (citing *O'Connor v. Ortega*, 480 U.S. 709, 718, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987)).

We consider all relevant factors in determining whether an employee has standing to challenge the seizure of an item from the workplace, including "(1) the employee's relationship to the item seized; (2) whether the item was in the immediate control of the employee when it was seized; and (3) whether the employee took actions to maintain his privacy in the item." *Angevine*, 281 F.3d at 1134. Although the evidence here shows the gun was a personal item, Easterling had left the gun on the office floor, the door to the office was open, the garage was unlocked, and he was walking away from the garage when he was arrested. Easterling took no action to keep the gun private. "We are reluctant to find a reasonable expectation of privacy where the circumstances reveal a careless effort to maintain a privacy interest." *Id.* at 1135. The district court

did not err in denying Easterling's motion to suppress evidence.

*Motion to dismiss for lack of jurisdiction*

Easterling contends 18 U.S.C. § 922(g)(1), which prohibits possession of a firearm by a convicted felon, is unconstitutional because it exceeds the authority granted Congress under the Commerce Clause. Easterling acknowledges in his appellate brief that this argument is foreclosed by our decision in *United States v. Dorris*, 236 F.3d 582 (10th Cir.2000), *cert. denied*, 532 U.S. 986, 121 S.Ct. 1635, 149 L.Ed.2d 495 (2001).

*Sufficiency of evidence*

Easterling contends the government presented insufficient evidence to support his conviction. We review a defendant's claim of insufficient evidence de novo, viewing the evidence and reasonable inferences therefrom in the light most favorable to the government. *See United States v. Heckard*, 238 F.3d 1222, 1228 (10th Cir.2001). To reverse a conviction on a claim of insufficient evidence, we must conclude that no rational jury could have found defendant guilty beyond a reasonable doubt. *Id.*

To sustain a conviction under § 922(g)(1), the government must prove (1) the defendant was convicted of a crime punishable by imprisonment exceeding one year; (2) the defendant thereafter knowingly possessed a firearm; and (3) the possession was in or affecting interstate or foreign commerce. *See Heckard*, 238 F.3d at 1228. Easterling challenges the second and third elements.

In arguing the evidence was insufficient to prove he knowingly possessed the gun, Easterling focuses on the fact that the government did not prove how the gun got into the garage and the fact that other people had access to the garage. The government responds by asserting there was sufficient evidence to establish Easterling's constructive possession of the gun. *See United States v. Wilson*, 107 F.3d 774, 779 (10th Cir.1997) (stating constructive possession is sufficient to prove possession of a firearm under § 922(g)(1)).

The government concedes that because of the "joint occupancy" of the garage, it had the burden to "present evidence to show some connection or nexus between the defendant and the firearm or other contraband." *Heckard*, 238 F.3d at 1228. The government must offer "some evidence supporting at least a plausible inference that the defendant had knowledge of and access to the weapon" in cases where joint occupancy exists. *Id.* The government argues it proved such a nexus by presenting evidence that the gun belonged to Easterling's ex-wife.

Kimberlee Easterling testified that she noticed her .380 caliber Taurus pistol was missing after Easterling collected his things when they separated in January 2000, and that she did not see the gun again. Further, she testified that she did not know the other individuals who had access to the garage. The government points out that no one else was in the garage when Easterling was arrested and that a photo album with pictures of the ·Easterlings was found next to the gun on the floor, along with mail addressed to Easterling.

■ With regard to Easterling's contention that the government failed to present sufficient evidence that his possession of the gun was in or affecting interstate commerce, the government presented evidence that the gun was manufactured in Brazil and imported by Taurus International Manufacturing in Miami, Florida. This history is sufficient to establish a past connection between the gun and interstate

commerce. *See United States v. Hanna*, 55 F.3d 1456, 1462 (10th Cir.1995). Easterling argues failure to prove an individualized substantial effect on interstate commerce renders the proof insufficient. We previously have rejected this argument. *See Dorris*, 236 F.3d at 584 (stating proof that possessed firearm previously traveled in interstate commerce was sufficient to satisfy the nexus between possession of a firearm by a felon and commerce). There was sufficient evidence to support Easterling's conviction.

### Jury instructions

Easterling contends the district court committed plain error when it supplemented the jury instruction regarding circumstantial evidence with an impromptu anecdote. During the reading of the instructions, the court deviated from the written instructions by adding:

> Some facts and circumstances are susceptible to different explanations. An example of this is you go to Wal–Mart— now, I'm just using that as an example— and you park your car. In the adjacent parking slot is a red Porsche. You go inside and shop for 45 minutes, come back out, and in the adjacent slot is a red Porsche.
>
> Now, if you stopped and thought about it at all, you may conclude that the Porsche that you first saw when you came to park is the same one that's there when you came back out. That's not inherently and necessarily true, it is a possibility.
>
> An alternative explanation is that when you were in the store, the driver of the red Porsche that was already there drove off and, lo and behold, that slot was occupied by a second driver with a second red Porsche; it's possible.
>
> And there's even a third—maybe you can think of more than three alternatives—that while you're in the store the driver of the red Porsche left the parking lot, all of a sudden remembers, "My Gosh, I forgot to get the one thing my wife asked me to get as opposed to my own shopping list," and came back and the same slot was open and so he returned to it. Thus, the Porsche was not there the entire time that your vehicle was adjacent.
>
> So when there are multiple explanations for things, it would be your task to determine which is more likely and which is less likely.

Suppl. Record 1.

Because Easterling failed to object to the court's supplementation of the instruction before the jury retired to deliberate, we review this issue for plain error. *See United States v. Concha*, 233 F.3d 1249, 1251 (10th Cir.2000). We may reverse on plain error grounds when (1) the error is clear or obvious, and (2) it affects the defendant's substantial rights. *See id.* The appellant bears the burden to prove that the error, if any, prejudiced his rights. *See id.*

■ Easterling argues that the anecdote was tantamount to an instruction for a directed verdict because, rather than providing the jury with an accurate understanding of the applicable issues and standards, it was easily subject to misapplication. "A plainly erroneous jury instruction affects a defendant's substantial rights if the instruction concerns a principal element of the defense or an element of the crime, thus suggesting that the error affected the outcome of the case." *United States v. Duran*, 133 F.3d 1324, 1330 (10th Cir.1998). Here, the jury was not misled with respect to either an element of the crime or a defense. The court merely advised the jury that circumstantial evidence may be subject to more than one

interpretation. If anything, the court's added statements were beneficial to Easterling in this instance where the government's case rested entirely upon circumstantial evidence and the government had to prove its case beyond a reasonable doubt.

### Enhanced sentence

Easterling next contends the district court erroneously enhanced his sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e), by finding his former conviction of mailing a threatening communication was a "violent felony." Prior to trial, the government filed notice that it would seek the enhanced penalty and set forth two prior convictions of "serious drug offenses," and the conviction of mailing a threatening communication as a "crime of violence." We review sentence enhancements under the Armed Career Criminal Act de novo. See Concha, 233 F.3d at 1252.

18 U.S.C. § 924(e) provides that in the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

Subsection (2)(B) defines the term "violent felony" as

any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another.

On August 25, 1993, Easterling was convicted of mailing a threatening communication, in violation of 18 U.S.C. § 875. Because § 924)(e) refers to prior convictions rather than prior conduct, the court must look to the elements of the crime rather than the underlying facts. Cf. United States v. Garcia, 42 F.3d 573, 577 (10th Cir.1994) (interpreting identical definition under U.S.S.G. § 4B1.1). Easterling's prior conviction had as an element the threatened use of physical force against another person. The district court was correct in concluding Easterling's prior conviction of mailing a threatening communication was a "crime of violence."

### Sentence greater than statutory maximum

Easterling argues the sentence enhancement violated his Fifth and Sixth Amendment rights because he was sentenced to a term greater than the statutory maximum for which he was indicted and convicted. We previously have addressed this argument and have rejected it. See Dorris, 236 F.3d at 586–88.

### Acceptance of responsibility

As his last issue, Easterling contends the district court should have allowed him the two-level adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a). According to the presentence investigation report, he was not allowed the adjustment because he put the government to its burden of proof by going to trial. Easterling objected to the report, claiming he went to trial to preserve issues for appeal.

We review the district court's application of the sentencing guidelines to the facts of a particular case with great deference and review its factual findings for clear error. *See United States v. Eaton,* 260 F.3d 1232, 1237 (10th Cir.2001). A defendant has the burden of proving he is entitled to a sentence reduction for acceptance of responsibility. *See id.* The defendant must demonstrate "affirmative acceptance of personal responsibility for his criminal conduct." *Id.*

■ The Application Notes to § 3E1.1 make it clear that a defendant's insistence on going to trial is not dispositive of application of the guideline.

This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). *In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.*

U.S.S.G. § 3E1.1, cmt. n. 2 (emphasis added). However, as the government points out, at no time did Easterling make any showing, pretrial or otherwise, that would suggest he accepted responsibility for possession of the gun. At the time of his arrest, Easterling told one of the officers that he did not know the gun was in the garage and he tried to blame his girlfriend for putting it there. His defense at trial was that the government did not prove he possessed the gun. In closing argument, defense counsel asserted "that someone in possession of a firearm leaves it in the building. And lo and behold, the last person there gets accused of possessing it." Record 5 at 176.

Easterling's argument that he only went to trial to preserve issues for appeal is without merit. A copy of a proposed plea agreement evinces the government's proposed agreement to allow Easterling to appeal the denial of his motion to suppress the gun after entry of his plea. As regards his contemplated constitutional challenge of 18 U.S.C. § 922(g)(1), the plea agreement would not have prevented that appeal. *See United States v. Barboa,* 777 F.2d 1420, 1423 n. 3 (10th Cir.1985) (holding guilty plea does not bar claim that statute is unconstitutional).

AFFIRMED.