Chief Judge GIERKE
delivered the opinion of the Court.[1]
This case presents us with questions certified by the Judge Advocate General of the Navy regarding the reasonable expectation of privacy a military person has in e-mail messages sent and stored on a government computer system.[2] Lance Corporal Long, in *59 a cross-petition, questions the holding by the lower court that the search and seizure violation it found was harmless beyond a reasonable doubt.[3] We conclude that based on the particular facts of this case, Appellee[4] did have a subjective expectation of privacy in these e-mails, that her expectation of privacy was objectively reasonable, and that the error in admitting these e-mails was not harmless beyond a reasonable doubt.
FACTS
Appellee was charged with several specifications of unlawful drug use in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a.[5] The Government’s case was based, in part, on several e-mails that were sent and received by Appellee and that were retrieved from a government server. These e-mails contained statements written by Appellee indicating, among other things, a fear that her drug use would be detected by urinalysis testing and the steps she had taken in an attempt to avoid such detection.
At trial, the defense made a motion to suppress the e-mails because they were the result of a search which was not properly authorized. The military judge denied the motion holding that Appellee had no expectation of privacy in the e-mails stored on the government server. Contrary to her pleas, Appellee was convicted by members of the charged offenses.[6]
On appeal, Appellee challenged the ruling of the military judge on the motion to suppress her e-mails. The United States Navy-Marine Corps Court of Criminal Appeals disagreed with the military judge, holding that the search was unlawful, but further concluding that the error in admitting the e-mails was harmless beyond a reasonable doubt.[7]
EVIDENCE ON THE MOTION TO SUPPRESS
Mr. Flor Asesor, the Senior Network Administrator for the government computer network, was the sole witness to testify on the motion. He testified that Captain Fitzharris, an investigator for the Marine Corps Inspector General, was looking for evidence of misconduct.[8] Captain Fitzharris told Mr. Asesor to retrieve the e-mails from Appellee’s e-mail account. Mr. Asesor retrieved her e-mails which had been stored on the government server and provided them to Captain Fitzharris.
The Court of Criminal Appeals found that the e-mails were retrieved as the result of a specific request by law enforcement officials[9] and concluded that “[tjhere is also no doubt under the facts of this case that the actions of the network administrator in looking for, retrieving, and turning over the subject emails to law enforcement officials amounted to a search.”[10] These findings and conclusions are consistent with the finding by the military judge that this was a “search for *60 evidence” and the Government’s concessions in their brief and oral argument before this Court. Mr. Asesor authenticated Appellate Exhibit XIII, a log-on banner which appeared anytime a user logged onto his or her office computer. This banner contained the following information:
This is a Department of Defense computer system. This computer system, including all related equipment, networks and network devices (specifically including Internet access), are provided only for authorized U.S. Government use. DoD computer systems may be monitored for all lawful purposes, including to ensure that then-use is authorized, for management of the system, to facilitate protection against unauthorized access, and to verify security procedures, survivability and operational security. Monitoring includes active attacks by authorized DoD entities to test or verify the security of this system. During monitoring, information may be examined, recorded, copied and used for authorized purposes. All information, including personal information, placed on or sent over this system may be monitored. Use of this DoD computer system, authorized or unauthorized, constitutes consent to monitoring of this system. Unauthorized use may subject you to criminal prosecution. Evidence of unauthorized use collected during monitoring may be used for administrative, criminal, or other adverse action. Use of this system constitutes consent to monitoring for these purposes.
Mr. Asesor also explained that each individual user of the computer system had his or her own unique password known only to them. Users were required to change then-password every ninety days. As the network administrator, Mr. Asesor did not have access to user passwords, and the only way he could access individual accounts was to lock the individual user out of the account. As the network administrator, Mr. Asesor was able to access the entire network or any part of it, including personal e-mails sent by individual users such as Appellee.
He testified that in conducting the monitoring described in the banner, it was general policy to avoid examining e-mails and then-content because it was a “privacy issue.” Mr. Asesor indicated that the examination and seizure of the e-mails in this case were not related to the monitoring program and were not the result of concerns about a security violation or unauthorized use. Instead, he conceded that they were retrieved as a part of a search for evidence of misconduct.
Based on these facts, the military judge denied the motion to suppress. He concluded that this was a search for evidence; there was not actual consent by the accused to this search; and there was no search authorization issued by a commander. The linchpin of the military judge’s ruling was that Appellee had no reasonable expectation of privacy in the e-mail account. In explaining his conclusion, the military judge stated, “I find that anyone who saw that banner on an ongoing basis would not believe that they had a reasonable expectation of privacy in any e-mails that were sent.”
THE COURT OF CRIMINAL APPEALS DECISION
The Navy-Marine Corps Court of Criminal Appeals examined the case and concluded that the military judge should have suppressed the e-mails.[11] The court held that Appellee had a reasonable expectation of privacy in the e-mails sent and received on her government computer.[12] The court further indicated that the banner relied upon by the military judge to find no privacy expectation may have limited Appellee’s expectation of privacy with regard to non-law enforcement monitoring of the computer system, but that the seizure of the e-mails in this case was for law enforcement purposes.[13] The court then tested the error for prejudice and ultimately concluded that the error was harmless beyond a reasonable doubt.[14]
*61 DISCUSSION
The Fourth Amendment of the Constitution protects individuals, including servicemembers, against unreasonable searches and seizures.[15] We have described a search as an official governmental intrusion into an individual’s reasonable expectation of privacy.[16] Whether such an expectation of privacy exists is therefore a question in any search and seizure analysis. The question is resolved by examining whether the individual challenging the alleged intrusion had a subjective expectation of privacy which was objectively reasonable.[17] If such an expectation is established, the inquiry then moves to the remaining issues raised by the Fourth Amendment.
Official intrusions into protected areas in the military require search authorization supported by probable cause, unless they are otherwise lawful under the Military Rules of Evidence (M.R.E.) or the Constitution of the United States as applied to members of the armed forces.[18]
The determination of the reasonableness of an expectation of privacy, “is understood to differ according to context.”[19] The present case involves a military member’s claimed expectation of privacy in e-mails sent and received on a government computer. The Supreme Court has recognized that in the context of the government workplace, employees may have a reasonable expectation of privacy against certain intrusions.[20] However, “[pjublic employees’ expectations of privacy in their offices, desks, and file cabinets ... may be reduced by virtue of actual office practices and procedures, or by legitimate regulation.”[21] The rationale for this suggestion is the “efficient and proper operation of the agency.”[22] Thus, an “employee’s expectation of privacy must be assessed in the context of the employment relation.”[23]
If the practices of the workplace establish an environment where the employee enjoys no reasonable expectation of privacy, the underlying search and seizure issue is easy to resolve. In such a situation the protections of the Fourth Amendment would simply not apply. If an expectation of privacy is supported by the workplace environment, however, the analysis must continue. The Supreme Court instructs us that, in the government workplace, a reasonable expectation of privacy may not provide the employee with complete Fourth Amendment protection. The Supreme Court, in O’Con-nor, concluded that the need for a search warrant based on probable cause was not required for legitimate workplace searches conducted by supervisors.[24] Instead, “[Pjublic employer intrusions on the constitutionally protected privacy interests of government employees for noninvestigatory, work-related purposes, as well as for investigations of work-related misconduct, should be judged by the standard of reasonableness under all the circumstances.”[25] This conclusion was based on the Supreme Court’s recognition that “[WJhile police, and even administrative enforcement personnel, conduct searches for the primary purpose of obtaining evidence for use in criminal or other enforcement proceedings, employers most frequently need to enter the offices and desks of their employees for legitimate work-related reasons wholly unrelated to illegal conduct.”[26]
*62 O’Connor, therefore, presents two situations where employer searches into zones of privacy are legitimate even if not supported by normal Fourth Amendment warrant and probable cause requirements. The first exception is where the search is for noninvestigatory, work-related purposes. The second is if the search by the employer is investigatory but involves matters of workplace misconduct. In either of these situations the search is evaluated using the standard of reasonableness based on all the surrounding facts and circumstances.[27] When the reasonableness standard is applicable, the government must establish: (a) that the search “was justified at its inception”; and (b) that the conduct of the investigation was “reasonably related in scope to the circumstances which justified the interference in the first place.”[28]
We must note that the military workplace is not the usual workplace envisioned by the Supreme Court in O’Connor. The military workplace can range from an office building to a bunker or tent in a combat zone. Similarly, military leaders and their subordinates are different than civilian public officials and their employees. Military commanders have authority and powers not possessed by civilian employers. Military commanders, for example, can authorize searches of their personnel,[29] order them confined,[30] and bring criminal charges against them.[31] Military personnel operate in a system that provides criminal sanctions for workplace misconduct.[32] Accordingly, we need to keep these unique aspects of the military environment in mind whenever we apply the O’Connor decision to workplace searches.
As this is a ease certified to this Court by the Judge Advocate General of the Navy, we will focus our analysis on the questions certified. We therefore turn to the ultimate question presented: did Appellee have a reasonable expectation of privacy in the e-mail communications sent and received via the Headquarters, Marine Corps (HQMC) computer network server?
As noted, in examining Fourth Amendment privacy interests, the courts look first to whether the individual had a subjective expectation of privacy.[33] If the courts ascertain that a subjective expectation of privacy exists, they then determine if that expectation is one that society is prepared to accept as reasonable.[34]
The first question is one of fact, which is reviewed using a clearly erroneous standard.[35] The second is one of law, which we review de novo.[36] In this case the military judge did not differentiate between the subjective and objective expectations of privacy. Instead, he simply concluded that there was no expectation of privacy. For purposes of our discussion, we will assume that the military judge found that any subjective expectation of privacy held by Appellee was not objectively reasonable and will review that determination de novo.
THE SUBJECTIVE EXPECTATION OF PRIVACY
This Court previously considered military members’ subjective expectations of privacy in Maxwell[37] and Monroe,[38] In Maxwell, the accused used America Online’s *63 (AOL) e-mail service to communicate with another junior Air Force officer about the accused’s sexual interests and to send and receive obscene material and child pornography.[39] This Court concluded that Maxwell possessed a subjective expectation of privacy where it was AOL’s policy to offer “contractual privacy protection,” including nondisclosure of e-mail without a court order.[40]
In Monroe, this Court concluded that, in contrast to Maxwell, the e-mail system in question was owned by the government.[41] We noted that Monroe’s subjective expectation of privacy was not governed by contractual agreement, as in Maxwell, and we concluded that, based on the totality of the circumstances, Monroe had no expectation of privacy, at least from persons maintaining the electronic mail host system.[42]
In making the case that she had an expectation of privacy, Appellee argues that access to her computer and therefore her e-mail account was protected by a password known only to her. Indeed, the network administrator testified that he did not know her password.
In response to the argument that Appellee’s password created an expectation of privacy, the Government points out that the passwords are required as a part of the government computer security concerns in order to limit unauthorized access to the government system. Accordingly, the Government concludes that passwords protect governmental interests, not individual privacy concerns.
The Government relies most heavily on the log-on banner to support its notion that Appellee could not have believed her e-mail communications were private. The Government argues that courts have looked at similar warnings and policies, and found them sufficient to establish that the employee had no expectation of privacy.[43] Conversely, Appellee argues that the language of the banner is not sufficient to remove her expectation of privacy from unreasonable, warrantless searches conducted for law enforcement purposes.
In light of the particular facts of this ease, we conclude that the lower court was not clearly erroneous in its determination that Appellee had a subjective expectation of privacy in the e-mails she sent from her office computer and in the e-mails that were stored on the government server.
We conclude that the testimony of the network administrator is the most compelling evidence supporting the notion that Appellee had a subjective expectation of privacy. Mr. Asesor repeatedly emphasized the agency practice of recognizing the privacy interests of users in their e-mail. The fact that Appellee had a password known only to her, supports Mr. Asesor’s testimony regarding the attitude toward privacy and the lower court’s conclusion that Appellee had a subjective expectation that access to her e-mails was protected and severely limited. Her subjective expectation was not diminished by the fact that the password may also have served certain governmental interests. The language of the log-on banner also confirms the privacy interests testified to by Mr. Asesor. The banner described access to “monitor” the computer system, not to engage in law enforcement intrusions by examining the contents of particular e-mails in a manner unrelated to maintenance of the e-mail system. In summary, we find that the password and the language of the banner, in light of Mr. Asesor’s testimony, support the lower court’s conclusion that Appellee met her burden of demonstrating a subjective expectation of privacy.
THE REASONABLENESS OF THE PRIVACY EXPECTATION
In O’Connor, the Supreme Court recognized that there may be an expectation of privacy in a government workplace but that *64 there is no talisman for determining the reasonableness of such an expectation in cases involving public employees.[44] Instead, the reasonableness of a privacy expectation will differ according to the context, and the “operational realities of the workplace.”[45] M.R.E. 314 discusses searches not requiring probable cause, and subsection (d) of M.R.E. 314 deals specifically with searches of government property. M.R.E. 314(d), which is consistent with the holding in O’Connor, indicates that searches of government property may be made without probable cause unless an individual has a reasonable expectation of privacy in that property and that the determination of the reasonableness of an expectation of privacy “depends on the facts and circumstances at the time of the search.”
The e-mails seized in this case were originally prepared in an office in HQMC on a computer owned by the Marine Corps and issued to Appellee. They were transmitted over the HQMC network system, stored on the HQMC server, and retrieved by the HQMC network administrator. Each of those factors might arguably fit a situation where society would be unwilling to recognize an individual expectation of privacy.[46] Other evidence in this case, however, convinces us that Appellee’s subjective expectation of privacy in these e-mails is one that society is prepared to accept as reasonable.
We consider the testimony of Mr. Asesor, the network administrator, describing the agency practices and policies to be most persuasive. We look to office practices because the Supreme Court in O’Connor indicated that privacy expectations in the workplace may be reduced by virtue of office practices, procedures, or regulation.[47] In this case, the policies and practices of HQMC reaffirm rather than reduce the expectations regarding privacy on office computers. These policies, among other things, require individual users to have passwords known only to themselves and to change their passwords periodirally to ensure privacy. Additionally, these policies limit outside network access to the network administrator and describe very limited conditions under which he would monitor the network for unauthorized use.
The testimony of the Government’s witness about policies and practices is strong evidence that Appellee’s subjective expectation of privacy was objectively reasonable. Mr. Asesor explained that HQMC’s policy regarding using the network to send personal e-mails had always been lenient and that such use of the network was considered authorized. Mr. Asesor further testified that when doing the testing and monitoring of the network, he did not monitor individual accounts because “it’s a privacy issue.”
This Court in Monroe held that a military member did not have a reasonable expectation of privacy with respect to the content of e-mail messages.[48] In Monroe, we held that the appellant, despite any subjective expectation of privacy, had no objectively reasonable expectation of privacy because the incriminating e-mails were discovered as part of the routine monitoring described in the log-on banner message in use.[49]
The totality of the circumstances in this case leads us to conclude that, unlike in Monroe, Appellee’s expectation of privacy was objectively reasonable. The HQMC log-on banner explained that the network administrator had access to Appellee’s computer as a “monitoring” function. The e-mails retrieved in this case were from Appellee’s account on an unclassified government computer system on which she was authorized limited personal use and were not obtained for maintenance or monitoring purposes. Mr. Asesor testified that prior to accessing Appellee’s e-mail account, he had no information based on his previous monitoring that she was using her account in an unauthorized manner. As noted, Mr. Asesor further testified that he retrieved Appellee’s e-mails to *65 look for evidence of misconduct. If Mr. Asesor had been doing the monitoring described in the log-on banner when he came across Appellee’s incriminating e-mails, this case would fall within the parameters of O’Connor and Monroe, thus presenting a different analytic framework and potentially a different result. Instead, Mr. Asesor confirmed that the sole purpose of seizing the e-mails was to search for evidence of misconduct. Accordingly, this case is not like Monroe where the incriminating e-mail evidence was found inadvertently by personnel performing routine systems maintenance described in the log-on banner. To the contrary, the evidence seized in this case was done so as a part of a search for law enforcement purposes.[50]
The result we reach in this case is not inconsistent with other federal court decisions that have considered similar situations and found no privacy expectation. In Simons,[51] the court was dealing with a very different, very specific policy regarding use of the computer system. In Simons the Internet policy both restricted use, including e-mail use, to official government business and indicated to employees that ongoing use of the system was subject to audit and inspection.[52] In the present case, however, Appellee was authorized to use the government computer for personal use and the banner described a less intrusive monitoring program directed to unauthorized use. In Angevine, the log-on banner expressly informed the employee that e-mail messages “contain no right of privacy or confidentiality.” [53] The banner in the instant case did not provide Appellee with notice that she had no right of privacy. Instead, the banner focused on the idea that her use of the system may be monitored for limited purposes.
Based on our review of precedent and the totality of the circumstances in this case, we conclude that while the log-on banner may have qualified Appellee’s expectation of privacy in her e-mail, it did not extinguish it. Simply put, in light of all the facts and circumstance in this case, the “monitoring” function detailed in the log-on banner did not indicate to Appellee that she had no reasonable expectation of privacy in her e-mail.
Based on this evidence, we conclude that Appellee’s expectation of privacy was, in fact, recognized as reasonable by virtue of the rules, regulations, practices, and procedures of HQMC. Accordingly, her subjective expectation of privacy was one which society is prepared to recognize as reasonable.
THE EXPECTATION OF PRIVACY-CONCLUSION
The fact that the seizure of Appellee’s emails in this case was solely for law enforcement purposes is not in dispute. While government employers may need to enter an employee’s office space or intrude into an employee’s computer or e-mail account for work-related reasons, searches conducted for the primary purpose of obtaining evidence of illegal conduct require probable cause.[54] As this search went beyond work-related monitoring or an investigatory search of work-related misconduct, it was not one exempt from the probable cause requirement. Thus, to be admissible, the evidence obtained in the search must have been pursuant to authorization.[55] Because there was no command authorization, the evidence should have been suppressed.[56]
*66 HARMLESS ERROR
After concluding that the search was unreasonable and that Appellee’s e-mails should have been suppressed, the Court of Criminal Appeals determined that the error was harmless beyond a reasonable doubt.[57] Appellee, in her cross-appeal, takes issue with this conclusion.
After reviewing all the evidence, we agree with Appellee. The lower court concluded that the witnesses for the Government were “credible, uniform, and detailed in their testimony regarding the appellant’s unlawful drug use,”[58] which was in sharp contrast to the defense witnesses whom the lower court found to be less than credible because they all had “significant motive to fabricate.”[59]
Although the lower court’s skepticism regarding the credibility of the defense witnesses may be well founded, there are substantial reasons why one might be equally skeptical of the credibility of the Government witnesses. The prosecution witnesses were all admitted drug users who had incentives to testify for the Government in this case. Additionally, they were all potential accomplices and the court members were instructed by the military judge that their testimony should therefore be viewed with great caution.
Perhaps most important to our determination of the harmless error issue is trial counsel’s reliance on the e-mails in his presentations to the court members. Trial counsel ended his opening statement referring to the importance of those e-mails because they were Appellee’s own account of her worries and fears about upcoming urinalysis testing.
Similarly, the subject of Appellee’s e-mails was emphasized in trial counsel’s closing argument. In discussing the members’ task of evaluating the evidence, trial counsel explained that the evaluation is made much easier by the e-mails, which contain Appellee’s own words. He then proceeded to read from several of the e-mails and concluded by saying: “Gentlemen, I submit to you, if there was anything even resembling reasonable doubt, those e-mails should pretty much clear that up.”
Whether error is harmless beyond a reasonable doubt is a question of law reviewed de novo.[60] The burden is on the Government to show whether “it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.”[61]
In Simmons, we concluded that the error in admitting certain evidence was not harmless beyond a reasonable doubt when trial counsel in that case “referred to the illegally seized letter in the beginning, middle, and end of his closing argument.”[62] We are faced with almost identical facts in this case, where constitutionally inadmissible evidence was a cornerstone of trial counsel’s opening statement and his closing argument.
Trial counsel obviously felt that the e-mails were very important to his ease. We agree. Accordingly, we cannot conclude that the erroneous admission of the e-mails was harmless beyond a reasonable doubt.
CONCLUSION
The certified questions are answered in the negative: the United States Navy-Marine Corps Court of Criminal Appeals did not err when it found that Appellee had a subjective expectation of privacy in her e-mail communications. Further, we hold that the lower court did not err when it concluded that Appellee’s privacy expectation was reason *67 able. Because we are not convinced that the error in admitting the e-mail communications was harmless beyond a reasonable doubt, we decide the granted issue in favor of Appellee. Accordingly, the findings and sentence are set aside. The record of trial is returned to the Judge Advocate General of the Navy. A rehearing is authorized.

. Oral argument in this case was heard on February 21, 2006, at Barry University, Dwayne O. Andreas School of Law, in Orlando, Florida, as a part of this Court’s "Project Outreach.” See United States v. Mahoney, 58 M.J. 346, 347 n. 1 (C.A.A.F.2003). This practice was developed as part of a public awareness program to demonstrate the operation of a federal court of appeals and the military justice system.

. The Judge Advocate General of the Navy certified the following issues:
I. WHETHER THE NAVY-MARINE CORPS COURT OF CRIMINAL APPEALS ERRED WHEN [IT] DETERMINED THAT, BASED ON THE EVIDENCE ADDUCED AT TRIAL, APPELLEE HELD A SUBJECTIVE EXPECTATION OF PRIVACY IN HER E-MAIL ACCOUNT AS TO ALL OTHERS BUT THE NETWORK ADMINISTRATOR.
II. WHETHER THE NAVY-MARINE CORPS COURT OF CRIMINAL APPEALS ERRED WHEN [IT] DETERMINED THAT IT IS REASONABLE, UNDER THE CIRCUMSTANCES PRESENTED IN THIS CASE, FOR AN AUTHORIZED USER OF THE GOVERNMENT COMPUTER NETWORK TO HAVE A LIMITED EXPECTATION OF PRIVACY IN THEIR E-MAIL COMMUNICATIONS SENT AND RECEIVED VIA THE COMPUTER NETWORK SERVER.

. We granted the following issue submitted by Appellee and Cross-Appellant:
WHETHER THE LOWER COURT ERRED IN FINDING THAT THE MILITARY JUDGE’S ERROR IN ADMITTING E-MAILS SENT AND RECEIVED BY LANCE CORPORAL LONG ON HER GOVERNMENT COMPUTER WAS HARMLESS BEYOND A REASONABLE DOUBT.

. Lance Corporal Long is the Appellee on the certified issues and the Appellant on her cross-petition. For clarity we will refer to her as Appellee throughout this opinion. We will refer to her opponent as the Government.

. 10 U.S.C. § 912a (2000).

. Appellee was sentenced to confinement for two months, reduction to the lowest enlisted pay grade and a bad-conduct discharge. The convening authority approved the sentence as adjudged.

. United States v. Long, 61 M.J. 539, 546, 549 (N.M.Ct.Crim.App.2005).

. Although there is no evidence in the trial transcript explaining the nature of Captain Fitzharris’s investigation, there are averments in the prosecution trial brief on the motion to suppress indicating that the investigation involved allegations of an improper relationship between Appellee and an officer. Although the details are not clear, the military judge's finding of fact that Captain Fitzharris was searching for evidence of misconduct is fully supported by the testimony of Mr. Asesor.

. Id. at 541.

. Id. at 543.

. Long, 61 M.J. at 546.

. Id.

. id.

. Id. at 546-49.

. United States v. Daniels, 60 M.J. 69, 70 (C.A.A.F.2004).

. Id. at 71.

. Minnesota v. Olson, 495 U.S. 91, 95-96, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990); United States v. Monroe, 52 M.J. 326, 330 (C.A.A.F.2000).

. See M.R.E. 314(k).

. O’Connor v. Ortega, 480 U.S. 709, 715, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987) (plurality opinion).

. Id. at 716, 107 S.Ct. 1492.

. Id. at 717, 107 S.Ct. 1492.

. Id. at 723, 107 S.Ct. 1492.

. Id. at 717, 107 S.Ct. 1492.

. Id. at 725, 107 S.Ct. 1492.

. Id. at 725-26, 107 S.Ct. 1492.

. Id. at 721, 107 S.Ct. 1492.

. Id. at 725-26, 107 S.Ct. 1492.

. Id. at 726, 107 S.Ct. 1492 (citations and quotation marks omitted).

. M.R.E. 315(d)(1).

. Article 9, UCMJ, 10 U.S.C. § 809 (2000).

. Articles 22, 23, and 24, UCMJ, 10 U.S.C. §§ 822, 823, 824 (2000).

. See, e.g., Article 86, UCMJ, 10 U.S.C. § 886 (2000), which provides criminal sanctions for what would be addressed through administrative measures in the civilian workplace.

. Olson, 495 U.S. at 95-96, 110 S.Ct. 1684; Monroe, 52 M.J. at 330.

. Ortega, 480 U.S. at 715, 107 S.Ct. 1492.

. United States v. Maxwell, 45 M.J. 406, 417 (C.A.A.F.1996).

. United States v. Reister, 44 M.J. 409, 413 (C.A.A.F.1996).

. 45 M.J. at 417-19.

. 52 M.J. at 330.

. 45 M.J. at 414.

. Id. at 417.

. 42 M.J. at 330.

. Id.

. See United States v. Simons, 206 F.3d 392, 398 (4th Cir.2000); United States v. Angevine, 281 F.3d 1130, 1135 (10th Cir.2002).

. 480 U.S. at 715, 107 S.Ct. 1492.

. Id. at 717, 107 S.Ct. 1492.

. See Bond v. United States, 529 U.S. 334, 338, 120 S.Ct. 1462, 146 L.Ed.2d 365 (2000).

. 480 U.S. at 717, 107 S.Ct. 1492.

. 52 M.J. at 330.

. Id.

. See Long, 61 M.J. at 541.

. 206 F.3d at 396.

. Id.

. 281 F.3d at 1133 (emphasis added).

. O'Connor, 480 U.S. at 724, 107 S.Ct. 1492.

. See M.R.E. 314; M.R.E. 315.

. Even if this had been an intrusion for noninvestigatory, work-related purposes or an investigation of work-related misconduct which, under O’Connor, would have been measured by a reasonableness standard, the Government would still fail. O'Connor requires the government to demonstrate reasonableness by showing that: (a) the search "was justified at its inception”; and (b) the conduct of the investigation was “reasonably related in scope to the circumstances which justified the interference in the first place.” 480 U.S. at 726, 107 S.Ct. 1492 (citations and quotation marks omitted). In the case at bar, the Government presented no evidence on either question and relied solely on the argument that Appellee had no reasonable expectation of privacy-

. Long, 61 M.J. at 546-49 (citing United States v. Simmons, 59 M.J. 485, 489 (C.A.A.F.2004); Heder v. United States, 527 U.S. 1, 15, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999)).

. Id. at 548.

. Id.

. Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Arizona v. Fulminante, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).

. Mitchell v. Esparza, 540 U.S. 12, 16, 124 S.Ct. 7, 157 L.Ed.2d 263 (2003) (per curiam) (quoting Heder, 527 U.S. at 15, 119 S.Ct. 1827 (quotation marks omitted); see also United States v. Hall, 58 M.J. 90, 94 (C.A.A.F.2003); Simmons, 59 M.J. at 489).

. Simmons, 59 M.J. at 491.