# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM S32342**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Corey R. ROGERS**
Airman First Class (E-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 8 February 2017

————————————

*Military Judge:* Wendy L. Sherman (sitting alone).

*Approved sentence:* Bad-conduct discharge, confinement for 4 months, forfeiture of $1,031 pay per month for 4 months, and reduction to E-1. Sentence adjudged 29 June 2015 by SpCM convened at Barksdale Air Force Base, Louisiana.

*For Appellant:* Lieutenant Colonel Anthony D. Ortiz, USAF; Major Lauren A. Shure, USAF.

*For Appellee:* Colonel Laura J. Megan-Posch, USAF; Gerald R. Bruce, Esquire.

Before DREW, J. BROWN, and SANTORO, *Appellate Military Judges*.

Judge SANTORO delivered the opinion of the Court, in which Chief Judge DREW and Senior Judge J. BROWN joined.

————————————

**PUBLISHED OPINION OF THE COURT**

————————————

SANTORO, Judge:

A military judge sitting as a special court-martial convicted Appellant, consistent with his pleas, of one specification of making a false official statement, nine specifications of forgery, and one specification of submitting a fraudulent

document to the Air Force, in violation of Articles 107, 123, and 134, UCMJ, 10 U.S.C. §§ 907, 923, 934. The adjudged sentence was a bad-conduct discharge, confinement for four months, forfeiture of $1,370 pay per month for four months, and reduction to E-1. The convening authority reduced the forfeitures to $1,031 pay per month for four months (the jurisdictional limit of the special court-martial) but otherwise approved the sentence as adjudged.[1]

Appellant asserts that the post-trial processing of this case was defective. We agree.

## I. BACKGROUND

Appellant's four-month marriage had deteriorated, and his wife and her son from a prior relationship moved out of their shared residence while Appellant was out of town. Upon his return, Appellant decided to divorce his wife but thought she would not agree without a protracted battle. To speed the process, Appellant forged various signatures on the forms necessary to obtain a divorce, including signatures of his wife, his wife's father, and a notary public (an active-duty paralegal) from the Barksdale Air Force Base legal office. Appellant filed the forged documents with the Caddo Parish, Louisiana, superior court; attended court hearings; and obtained a default judgment of divorce when his wife failed to attend the final hearing.

After fraudulently obtaining his divorce decree, Appellant filed it with the mission support squadron at Barksdale, which resulted in his wife's and her son's loss of military benefits. Appellant's wife learned of his actions when she was denied medical care.

## II. DISCUSSION - POST-TRIAL PROCESSING

Rule for Court-Martial (R.C.M.) 1106 requires that before the convening authority takes action on the findings and sentence of a court-martial, she receive a recommendation from her staff judge advocate (SJA). The purpose of the staff judge advocate's recommendation (SJAR) is to assist the convening authority, who is often not legally trained, exercise her command prerogative. R.C.M. 1106(d)(1).

Appellant alleges that the SJAR contains significant errors that materially prejudiced his opportunity to receive meaningful clemency consideration. First, he alleges that the SJA incorrectly advised the convening authority about the maximum imposable punishment. Second, he alleges that the SJA failed to advise the convening authority of Appellant's clemency request. Third,

---

[1] A pretrial agreement limiting the term of confinement to five months had no effect on the sentence.

he alleges that the SJA erroneously told the convening authority that she did not have the discretion to disapprove Appellant's punitive discharge. Upon our review of the SJAR, we noted a fourth potential error: the SJA told the convening authority that the adjudged sentence "was not appropriate" for the offenses of which Appellant was convicted.[2]

Proper completion of post-trial processing is a question of law which we review de novo. *United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim. App. 2004) (citing *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)). Failure to comment in a timely manner on matters in the SJAR, or on matters attached to the SJAR, forfeits any later claim of error in the absence of plain error. R.C.M. 1106(f)(6); *United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F. 2005). "To prevail under a plain error analysis, [Appellant bears the burden of showing] that: '(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right.'" *Scalo*, 60 M.J. at 436 (quoting *Kho*, 54 M.J. at 65). Because of the highly discretionary nature of the convening authority's action on a sentence, we grant relief if Appellant presents "some colorable showing of possible prejudice" affecting his opportunity for clemency. *Kho*, 54 M.J. at 65 (quoting *United States v. Wheelus*, 49 MJ 283, 289 (1998)).

An error in the SJAR, however, "does not result in an automatic return by the appellate court of the case to the convening authority." *United States v. Green*, 44 M.J. 93, 95 (C.A.A.F. 1996). "Instead, an appellate court may determine if the accused has been prejudiced by testing whether the alleged error has any merit and would have led to a favorable recommendation by the SJA or corrective action by the convening authority." *Id.*

The SJAR told the convening authority that the maximum sentence in Appellant's case was a dishonorable discharge, confinement for five years, and forfeiture of two-thirds pay and allowances for one year. The actual maximum sentence was the jurisdictional limit of the special court-martial: a bad-conduct discharge, confinement for 12 months, forfeiture of two-thirds pay (not pay and allowances) per month for 12 months, and reduction to E-1. Article 19, UCMJ, 10 U.S.C. § 819.

Appellant submitted two separate clemency requests. He submitted the first approximately one month after trial and before receiving the SJAR. In that first submission he asked the convening authority not to approve the bad-conduct discharge. The second clemency submission, filed after Appellant received the SJAR, noted that Appellant had previously submitted a clemency request and supplemented it by asking that the forfeitures be reduced. There

---

[2] In context, it appears the SJA may be referring to the fact that the adjudged forfeitures exceeded the jurisdictional limit of the court-martial, but that is not clear.

is no evidence in the record that the SJA provided Appellant's first clemency request to the convening authority. The Addendum to the SJAR also failed to note or comment upon Appellant's request that the punitive discharge not be approved.

The Government concedes that the SJA erred in her statement about the maximum punishment. The Government also concedes there is no evidence that the SJA advised the convening authority of Appellant's initial clemency request. The Government argues, however, that (1) any error is harmless because there is no reasonable possibility that the erroneous statement about the maximum punishment swayed the convening authority's decision to approve the sentence; and (2) Appellant's request that the convening authority not approve the punitive discharge sought something that was not within the convening authority's power to grant, meaning that there could be no possible prejudice flowing from her lack of awareness of it.

This second argument—that the convening authority could not have disapproved the punitive discharge even had she wanted to—is also the crux of Appellant's third assignment of error. The SJAR explicitly told the convening authority that she was required to approve the bad-conduct discharge. Appellant contends that this legal advice was erroneous.

The National Defense Authorization Act for Fiscal Year 2014 (FY14 NDAA) substantially modified the convening authority's ability to approve findings and sentences under Article 60, UCMJ, 10 U.S.C. § 860. FY14 NDAA, Pub. L. No. 113-66, 127 Stat. 956–57 (2013). A convening authority can no longer, except for only the most minor offenses, dismiss any charge or specification or change any finding of guilty to a finding of guilty to a lesser-included offense. The convening authority can also no longer "disapprove, commute, or suspend in whole or in part an adjudged sentence of confinement for more than six months or a sentence of dismissal, dishonorable discharge, or bad conduct discharge" except in certain circumstances not present here. *Id*. These changes became effective on 24 June 2014. *Id*. at 958. Although the FY14 NDAA did not address which version of Article 60, UCMJ, applied when offenses straddled the FY14 NDAA's effective date, the FY15 NDAA did:

> With respect to the findings and sentence of a court-martial that includes both a conviction for an offense committed before [24 June 2014] and a conviction for an offense committed on or after that effective date, the convening authority shall have the same authority to take action on such findings and sentence as was in effect on the day before such effective date[.]

Carl Levin and Howard P. "Buck" McKeon National Defense Authorization Act for Fiscal Year 2015, Pub. L. No. 113-291, 128 Stat. 3292, 3365 (2014).

Many of the specifications to which Appellant pleaded and was found guilty alleged that his crimes occurred within a range of dates ("between on or about . . . and on or about . . ."). The earliest date referenced in any specification is 21 February 2014, before the effective date of the FY14 NDAA changes. No specification with an inception date before the effective date of the FY14 NDAA contained a terminal date that was also before the effective date of the FY14 NDAA, meaning that several specifications alleged date ranges that began before, but ended after, the effective date of the FY14 NDAA. On its face, therefore, it would appear that the convening authority *did* have the authority not to approve Appellant's punitive discharge and the SJA's advice in this respect was erroneous.

However, as part of his guilty plea allocution and despite pleading guilty to specifications that alleged his criminal conduct began as early as February 2014, Appellant entered into a stipulation of fact that his criminal conduct occurred no earlier than 16 July 2014. Based on that stipulated offense date, the Government argues that the FY14 NDAA's change applied to Appellant, the convening authority was therefore without authority to disapprove the punitive discharge, and thus the SJA's legal advice was correct (and Appellant's request that the discharge not be approved could not have been granted, mooting the error in the SJA's failure to bring it to the convening authority's attention).

This procedural history frames the ultimate question: for purposes of determining whether the FY14 NDAA's changes to Article 60 apply to a particular offense, do we use the dates alleged in a specification or do we use the actual offense date? This appears to be a question of first impression for which we have no legislative history to guide us.

The Government and Appellant's briefs, unsurprisingly, adopt the interpretation beneficial to their respective positions. Yet neither provides any legal analysis or argument as to why their interpretation is correct.

Using the actual offense date initially seems like it must be the correct approach. After all, both parties have agreed that none of Appellant's offenses occurred before the effective date of the FY14 NDAA. And since we know as a matter of fact that the offenses occurred after the effective date, it also must be the case that the convening authority lacked the power to disapprove the punitive discharge.

But that approach only works in cases when both sides agree on an actual offense date.

The FY14 NDAA changes apply equally to findings resulting from guilty pleas as well as litigated cases. In some (but certainly not all) guilty plea cases the parties negotiate a stipulation of fact. That stipulation of fact may or may

not contain an agreed-upon offense date for a myriad of reasons.[3] In the absence of a stipulation, an accused may admit committing an offense on a certain date within a charged date range; even if the Government believes the offense occurred on a different date than that admitted, or on additional dates, the guilty plea would ordinarily still be provident as long as the admitted date is within (or close to, if the date range is charged as "on or about") the specification's start and end dates.

In a litigated case, if the trier of fact returns a guilty finding to a specification alleging that an act or acts occurred during a range of dates, the trier of fact is ordinarily not required to make a finding that the offense(s) occurred on a date certain.[4] "Unless the date is an essential element of the offense, an exact date need not be alleged." *United States v. Williams*, 40 M.J. 379, 382 (C.M.A. 1994), (citing *Ledbetter v. United States*, 170 U.S. 606, 612 (1898)). The trier of fact may even be unable to determine the exact date on which a crime occurred, such as in a drug use case resulting from a positive urinalysis or a domestic abuse case in which the violence occurred regularly (but not daily) during a certain period.

The Government's charging decisions—including date ranges in specifications—have constitutional effect. An accused who pleads guilty to a specification alleging that he committed a crime during a certain date range generally enjoys protection from prosecution for the same crime during the entire date range alleged in the specification. U.S. CONST. Amend V; Article 44, UCMJ, 10 U.S.C. § 844; *United States v. Francis*, 15 M.J. 424, 428–29 (C.M.A. 1983) (citing *United States v. Lynch*, 47 C.M.R. 498, 502 (C.M.A. 1973)).

Had the Government been concerned about the impact of the FY14 NDAA on Appellant's case, once they decided to agree to specific offense dates, it could

---

[3] Those reasons may include the parties' inability to agree on the actual date of the offense, perhaps because the evidence is insufficient to establish the date with sufficient certainty. An offense may involve a continuing course of conduct such that there is no single offense date. A victim, particularly one of tender years, may not be able to pinpoint the date of an offense other than by reference to seasons, birthdays, or other non-date-specific memories.

[4] "Minor variances" to the date of an offense "do not necessarily change the nature of the offense and in turn are not necessarily fatal," especially where the Government has made use of the "on or about" language in the charged specification. *United States v. Teffeau*, 58 M.J. 62, 66 (C.A.A.F. 2003) (citing *United States v. Hunt*, 37 M.J. 344, 347-48 (C.M.A. 1993)). The words "on or about" are "words of art in pleading which generally connote any time within a few weeks of the 'on or about' date." *United States v. Brown*, 34 M.J. 105, 110 (C.M.A. 1992).

have changed the specifications' start dates either to the actual offense date or to a date after the FY14 NDAA's effective date pursuant to R.C.M. 603. They also could have requested findings by exceptions and substitutions. They did neither.

In cases without a stipulated offense date, were we to engage in post-trial analysis to determine when an offense occurred, if we do not use the dates alleged in the specification of conviction, what are we entitled to consider: just the evidence before the court-martial or the entire record? Do we apply a preponderance of the evidence standard? Clear and convincing? Proof beyond a reasonable doubt? The unworkability of such post-trial review was made clear in a different context in *United States v. Walters*, 58 M.J. 391, 396 (C.A.A.F. 2003).[5]

After balancing the considerations outlined above, we first conclude that Congress did not intend, and the military justice system would not be well-served by, one rule that applies to cases involving stipulations of fact and a different rule that applies to all other cases. Nor do we believe that requiring an individualized, case-by-case post-trial effort to determine the specific date on which an offense (or multiple offenses) occurred is workable in all, or even most, criminal cases. We decline to adopt a *Walters*-like requirement that the court-martial make a special finding with respect to the date of an offense because, as noted above, the offense date is not an element of the crime. Finally, in the FY15 NDAA, Congress allowed convening authorities to exercise their pre-FY14 NDAA discretion in "straddle" or mixed cases, signaling that if both the old and new rules could apply to a single court-martial action, the Appellant retained the benefit of the more expansive, pre-FY14 NDAA rule.

We therefore hold that for purposes of determining whether the FY14 NDAA changes to Article 60, UCMJ, apply, we look to the date(s) in the specification(s) of which an accused is convicted (as alleged or as modified, in the case of exceptions and substitutions). We will not conduct a post-trial dive below the charged dates to attempt to determine with certitude when an offense occurred for Article 60, UCMJ, purposes. Although we acknowledge that this rule may in individual cases (and particularly in Appellant's case) result in the convening authority's having greater discretionary power than the FY14

---

[5] Walters was charged with committing an offense "on divers occasions." The court-martial excepted the "on divers occasions" language and found him guilty of only a single offense during the charged time frame but did not specify which of the incidents the prosecution sought to prove was the event they found to have occurred. Our superior court held that such an ambiguous result precluded meaningful appellate review. *United States v. Walters*, 58 M.J. 391, 396–97 (C.A.A.F. 2003). After *Walters*, a court-martial in such a circumstance must make an explicit finding as to which of the charged events was proven beyond a reasonable doubt.

NDAA might suggest, we believe that our holding is both consistent with the FY15 NDAA's amendment and is the only workable and consistently-applicable rule for the military justice system.

The SJA therefore erred when she told the convening authority she could not disapprove Appellant's punitive discharge. She also erred in failing to notify the convening authority of Appellant's initial clemency request. As clemency is often "an accused's best hope for sentence relief," *United States v. Dresen*, 40 M.J. 462, 465 (C.M.A. 1994), (quoting *United States v. Stephenson*, 33 M.J. 79, 83 (C.M.A. 1991)), and the SJA's erroneous advice went directly to Appellant's clemency request, we cannot say that the SJA's errors were harmless.

## III. CONCLUSION

The record of trial is returned to The Judge Advocate General for remand to the convening authority for new post-trial processing consistent with this opinion. Article 66(e), UCMJ, 10 U.S.C. § 866(e). Thereafter, Article 66(b), UCMJ, 10 U.S.C. § 866(b), will apply.

FOR THE COURT

KURT J. BRUBAKER
Clerk of the Court